UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
OLGA LYDIA SANTANA,

                Plaintiff,

      -against-

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.
-------------------------------------------------------X

**DECISION AND ORDER**

18 Civ. 10870 (PED)

**PAUL E. DAVISON, U.S.M.J.**

Plaintiff Olga Sanchez brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)

seeking judicial review of a final determination of the Commissioner of Social Security (the

"Commissioner") denying her application for disability benefits.[1] This case is before me for all

purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c) (Dkt. #11).  Presently

before this Court are (1) plaintiff's motion for judgment on the pleadings (Dkt. #14 (plaintiff's

motion), #15 (plaintiff's memorandum of law)) and (2) the Commissioner's motion for judgment

on the pleadings (Dkt. #18 (defendant's motion), #19 (defendant's memorandum of law)).  For

the reasons set forth below, plaintiff's motion is **DENIED** and defendant's motion is

**GRANTED**.

---

[1] Plaintiff alleges entitlement to disability-related Supplemental Security Income
("SSI").  Because the definition of "disabled" governing eligibility is the same for SSI and
Disability Insurance Benefits, the term "disability benefits" refers to both.  See Paredes v.
Comm'r of Soc. Sec., No. 16 Civ. 810, 2017 WL 2210865, at *1 n.1 (S.D.N.Y. May 19, 2017);
42 U.S.C. §§ 423(d), 1382c(a)(3).

# I. BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration, filed by defendant on April 1, 2019 (Dkt. #13).

A. Application History

Plaintiff was born on January 31, 1966. R. 153. On or about October 8, 2015, plaintiff applied for disability benefits and alleged that she had been disabled since January 7, 2012. R. 12, 15, 153-61. Her claim was administratively denied on or about December 29, 2015. R. 80-83. On or about February 2, 2016, plaintiff requested a hearing before an administrative law judge ("ALJ"). R. 86-88. Plaintiff obtained counsel; counsel submitted a pre-hearing brief in which he, *inter alia*, amended plaintiff's alleged onset date to October 1, 2015. R. 89, 240-42. A hearing was held on December 18, 2017 before ALJ David Suna. R. 34. Plaintiff appeared with counsel (via video) and testified at the hearing. R. 36-68. On February 23, 2018, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act ("SSA"). R. 12-29. The ALJ's decision became the final order of the Commissioner on September 27, 2018, when the Appeals Council denied plaintiff's request for review. R. 1-6. Plaintiff, by and through counsel, timely filed this action on November 20, 2018.

B. Medical Records

The record reflects treatment rendered to plaintiff by the following medical providers:

• 10/29/15 - 7/18/17: Bella Vista Clinic, R. 243-87, 353-407.

• 6/11/15 - 11/10/17: New York Psychotherapy and Counseling, R. 288-309, 408-597.

Plaintiff also underwent four consultative examinations: two on December 10, 2015 (a

psychological examination by Dr. John Nikkah and an internal medicine examination by Dr. Peter Graham); and two on September 5, 2017 (a psychological examination by Dr. Arlene Broska and an internal medicine examination by Dr. Ram Ravi). R. 311-15, 317-19, 329-35, 337-45.

The Court conducted a plenary review of the entire administrative record, familiarity with which is presumed. Thus, I assume knowledge of the facts surrounding plaintiff's medical treatment and do not recite them in detail, except as necessary in the context of the analysis set forth below.

## II. LEGAL STANDARDS

A. Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). See 42 U.S.C. § 1383(c)(3). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "'determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard.'" Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)).

The substantial evidence standard is "even more" deferential than the "'clearly erroneous' standard." Brault v. Soc. Sec. Admin, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings and the inferences drawn from those facts, and the Commissioner's findings of fact are considered conclusive if they are

supported by substantial evidence. See 42 U.S.C. § 405(g); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence is "'more than a mere scintilla'" and "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted).

"However, where the proper legal standards have not been applied and 'might have affected the disposition of the case, the court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.'" Velez v. Colvin, No. 14 Civ. 3084, 2017 WL 1831103, at *15 (S.D.N.Y. June 5, 2017) (citing Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004)). Thus, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear in relation to the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

B. Statutory Disability

A claimant is disabled under the SSA when he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security Regulations set forth a five-step sequential analysis for evaluating whether a person is disabled under the SSA:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v)).[2] The claimant bears the burden of proof as to the first four steps of the process. See Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008). If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final

---

[2] Many of the regulations and Social Security Rulings cited herein have been amended subsequent to the ALJ's decision. For the sake of brevity, I discuss (and have applied) the relevant regulations/rulings as they existed at the time of the ALJ's decision.

step. See Brault, 683 F.3d at 445.

Additionally, where a claimant suffers from an alleged mental impairment, the ALJ is required to utilize a "special technique" at the second and third steps. See Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); see also 20 C.F.R. §§ 404.1520a, 416.920a. At step two, in determining whether the claimant has a "severe impairment," the ALJ must rate the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See Kohler, 546 F.3d at 266; 20 C.F.R. §§ 404.1520a(b)-(c), 416.920a(b)-(c). If the claimant's mental impairment or combination of impairments is severe, then at step three the ALJ must "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder." Kohler, 546 F.3d at 266 (citing 20 C.F.R. § 404.1520a(d)(2)). See also 20 C.F.R. § 416.920a(d)(2). If the claimant suffers from a severe impairment which is not listed (or equivalent in severity to a listed mental disorder), then the ALJ must assess the claimant's residual functional capacity. See Kohler, 546 F.3d at 266 (citing § 404.1520a(d)(3)). See also 20 C.F.R. § 416.920a(d)(3).

### III. THE ALJ'S DECISION

To assess plaintiff's disability claim, the ALJ followed the five-step sequential analysis and applied the "special technique" at steps two and three. See 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920a and discussion, *supra*. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since October 2, 2015 (the date of her SSI application). R. 15. At step two, the ALJ concluded that plaintiff had the following "severe impairments" within the meaning of the SSA: major depressive disorder; hypertension; obesity; and

osteoarthritis of both knees. Id.[3] At step three, the ALJ determined that plaintiff's impairments (individually or combined) do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15-18.

Next, the ALJ concluded that plaintiff has the RFC to perform "light work" with the following non-exertional limitations:

> [T]he claimant can occasionally operate foot controls and occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, knee, crouch, and crawl. She can tolerate up to loud noise. She is limited to more than simple, but less than complex tasks, but not at a production rate pace. She can tolerate only occasional changes in the workplace and can occasionally interact with supervisors and coworkers. She can have no contact with the public. She will be off-task 5 percent of the time in addition to normal breaks, and will have on average 1 unscheduled absence per month.

R. 18. In reaching this conclusion, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "opinion evidence" in accordance with 20 C.F.R. §§ 416.927 and 416.929 and Social Security Ruling 16-3p. Id. As to the opinions pertaining to plaintiff's mental limitations, the ALJ gave "significant weight" to the opinions of State agency review psychologist Dr. L. Popali-Lehane, consultative examiner Dr. Nikkah and consultative examiner Dr. Broska; he gave "partial weight" to a treating source opinion from psychiatrist Dr. Donn Wiedershine. R. 24-25. As to the opinions pertaining to plaintiff's physical limitations, the ALJ gave "partial weight" to the opinions of consultative examiners Dr. Graham and Dr. Ravi. R. 25-26.

At step four, the ALJ determined that plaintiff "has no past relevant work because there

---

[3] The ALJ also concluded that plaintiff's "medically determinable impairment of GERD [gastroesophageal reflux disease] is a non-severe impairment under the Regulations." R. 15.

is no indication that any of her prior jobs were performed at a substantial gainful activity level."
R. 27. At step five, based upon the testimony of a vocational expert, the ALJ concluded that
plaintiff "is capable of making a successful adjustment to other work that exists in significant
numbers in the national economy." R. 28-29. Thus, the ALJ found plaintiff "not disabled" as
defined in the SSA. R. 29.

## IV. ASSESSING THE ALJ'S FINDINGS

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to accord
controlling weight to Dr. Wiedershine's opinion; (2) the ALJ's RFC determination that plaintiff
could stand or walk six hours and lift twenty pounds is not supported by substantial evidence;
and (3) the ALJ failed to properly consider plaintiff's obesity. Dkt. #14, at 12-25. Defendant
argues, in response, that the ALJ applied the correct legal standards and that substantial evidence
supports the ALJ's decision. Dkt. #18, at 17-27.

A. Treating Physician Rule

On March 3, 2016, Dr. Donn Wiedershine (one of plaintiff's treating psychiatrists)
completed a medical source statement in which he opined that plaintiff's impairments would
cause her to be absent from work more about three times a month. R. 349. Dr. Wiedershine
rated plaintiff's capabilities to perform basic mental activities of work on a regular, continuing
basis as follows:

> No/Mild Loss:
> -remember locations and work-like procedures
> -understand and remember very short, simple instructions
> -carry out very short, simple instructions
> -make simple work-related decisions
> -interact appropriately with the public
> -ask simple questions or request assistance
> -maintain socially appropriate behavior
> -adhere to basic standards of neatness and cleanliness

-be aware of normal hazards and take appropriate precautions
-use public transportation

Moderate Loss:
-sustain an ordinary routine without special supervision
-accept instructions and respond appropriately to criticism from
        supervisors
-get along w/ coworkers and peers w/o unduly distracting them or
        exhibiting behavioral extremes
-respond appropriately to changes in a routine work setting
-set realistic goals or make plans independently of others

Marked Loss:
-understand and remember detailed instructions
-carry out detailed instructions
-maintain attention and concentration for extended periods, i.e. 2 hour
        segments
-maintain regular attendance and be punctual
-deal with stress of semi-skilled and skilled work
-work in coordination w/ or proximity to others w/o being unduly
        distracted
-complete a normal workday or workweek w/o interruptions from
        psychologically-based symptoms
-perform at a consistent pace w/o an unreasonable number and length of
rest periods
-travel in unfamiliar places

R. 349-51. Finally, Dr. Wiedershine indicated to what degree the following functional

limitations exist as a result of plaintiff's mental impairment:

-restriction of activities of daily living: SLIGHT
-difficulties in maintaining social functioning: MARKED
-deficiencies of concentration/persistence/pace (resulting in failure to
        timely complete tasks): CONSTANT
-episodes of deterioration/decompensation in work, work-like settings
        which cause the individual to withdraw from that situation or to
        experience exacerbation of signs/symptoms: CONTINUAL

R. 351-52.

    The ALJ accorded "partial weight" to Dr. Wiedershine's opinions. R. 25. Plaintiff

argues that Dr. Wiedershine's opinions "were entitled to controlling or at least great weight"

because he "was a specialist in his field, and his opinions were consistent with those of other treating mental health professionals and other medical evidence, and supported by consistent clinical findings over an extended treating relationship with Ms. Santana[.]" Dkt. #15, at 21,

"[A] treating physician's statement that the claimant is disabled cannot itself be determinative." Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)).  However, the ALJ must give "controlling weight" to a "medical opinion" from a claimant's "treating source" if the treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the administrative record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  See Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015).  A "treating source" is a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Where (as in this case) the treating physician is a mental health professional:

> the treating physician rule takes on added importance.  A mental health patient may have good days and bad days; she may respond to different stressors that are not always active.  Thus, the longitudinal relationship between a mental health patient and her treating physician provides the physician with a rich and nuanced understanding of the patient's health that cannot be readily achieved by a single consultative examination.

Bodden v. Colvin, No. 14 Civ. 8731, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015). See

Maldonado v. Colvin, No. 15 Civ. 4016, 2017 WL 775829, at *19 (S.D.N.Y. Feb. 28, 2017);

Vazquez v. Comm'r of Soc. Sec., No. 14 Civ. 6900, 2015 WL 4562978, at *14 (S.D.N.Y. July

21, 2015) ("[T]he treating physician rule is particularly important in the context of mental health

because mental impairments are generally difficult to diagnose without subjective, in-person

examination.") (quotation marks and citation omitted).

     If an ALJ determines that a treating source's opinion is not entitled to controlling weight,

the ALJ must consider the following factors in deciding what weight to accord that opinion: (1)

the length of the treatment relationship and frequency of treatment; (2) the nature and extent of

the treatment relationship; (3) explanations the source provides for the opinion; (4) the extent to

which the opinion is consistent with the record as a whole; (5) the treating source's

specialization; and (6) any other factors brought to the ALJ's attention which tend to support or

contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ need not recite

each factor explicitly, provided the ALJ's decision reflects substantive application of the

regulation. See Guerra v. Saul, 778 F. App'x 75, 77 (2d Cir. 2019) ("A failure to 'explicitly

consider' these factors is a procedural error warranting remand unless a 'searching review of the

record assures the reviewing court that the substance of the treating physician rule is not

traversed.'") (quoting Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019)); Atwater v.

Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and

every factor where the ALJ's reasoning and adherence to the regulation are clear."). However,

an ALJ's failure to set forth "good reasons" for the weight accorded to a treating source opinion

is a ground for remand. See Greek, 802 F.3d at 375.

     Here, the ALJ accorded "partial weight" to Dr. Wiedershine's opinion, for the following

reasons:

> [His] opinions are not consistent with the record as a whole, and he is likely not
> familiar with the Social Security Administration program. Moreover, his
> opinions are not well-supported by medically acceptable clinical and laboratory
> diagnostic techniques and are inconsistent with the other substantial evidence of
> record, including the claimant's statements regarding her numerous activities of
> daily living and his treatment notes showing the claimant's symptoms were at
> least partially controlled with medication therapy.

R. 25. Plaintiff contends that the ALJ's failure to give controlling weight to Dr. Schwartz's opinion constituted legal error. I disagree. In my view, the record supports the ALJ's explanation for the weight accorded to Dr. Wiedershine's opinion.

As an initial matter, defendant admits that Dr. Wiedershine's supposed unfamiliarity with the Social Security Administration program "does not appear to be a relevant consideration in the evaluation of treating medical opinion evidence[.]" Dkt. #18, at 20 n.7. Nonetheless, the ALJ proffered additional, sound reasons for discounting Dr. Wiedershine's opinions.

First, as the ALJ noted, Dr. Wiedershine's treatment notes indicate that plaintiff's symptoms were at least partially controlled with medication therapy:

> • October 9, 2015: plaintiff reported she felt much better and her paranoia,
> depression, anxiety, and hallucinations had improved, she had no suicidal or
> homicidal ideation, and she was sleeping 8 hours. R. 437.

> • December 5, 2015: plaintiff reported "feeling much better–paranoia 75%
> improved; AH [auditory hallucinations] gone, and depression 80% improved; no
> SI [suicidal ideation] or HI [homicidal ideation]; sleeping now 8 hours; anxiety
> 80% improved; no panic attacks; appetite less which is good (not gaining more
> weight)." R. 454. She was "happier and appreciative" upon mental status
> examination. Id.

> • January 15, 2016: paranoia 80% improved; depression 20% better than a
> week ago; no suicidal ideation this past week; AH gone; no homicidal ideation or
> panic attacks; anxiety 4/10. R. 466.

> • February 5, 2016: upon mental status examination, plaintiff was "much
> less depressed; smiling now." R. 471.

- March 4, 2016: upon mental status examination, plaintiff was "much less depressed; smiling now." R. 478.

- April 1, 2016: upon mental status examination, plaintiff was "much less depressed; smiling now." R. 484.

- May 6, 2016: upon mental status examination, plaintiff was "much less depressed; smiling now." R. 491.

- July 15, 2016: upon mental status examination, plaintiff was a "little depressed and anxious." R. 503.

- August 12, 2016: upon mental status examination, plaintiff was a "little depressed and anxious." R. 509.

- October 7, 2016: upon mental status examination, plaintiff was a "little sad as feels [sic] won't get out of the shelter and obtain an apartment." R. 521.

- December 2, 2016: upon mental status examination, plaintiff was a "little sad as feels won't [sic] get out of the shelter and obtain an apartment." R. 531.

- December 30, 2016: plaintiff reported that her depression was 60% better with medication. R. 536. Upon mental status examination, plaintiff was "slightly anxious about getting out of the shelter and obtaining an apartment." R. 537.

Accordingly, the ALJ did not err in declining to give controlling weight to Dr. Wiedershine's opinions on the ground that they were inconsistent with his own treatment notes suggesting plaintiff's condition was improving with treatment. See Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (declining to afford controlling weight to treating source statement finding that claimant's psychological impairments prevented her from staying on task for most of the work day and appropriately dealing with stress and the public, where the treatment notes described claimant's mood as "stable" or "good" and not suicidal and reflected that claimant engaged in a wide range of recreational activities); Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that substantial evidence supported giving limited weight to treating

psychiatrist's opinion because the opinion conflicted with his own treatment notes); Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) (declining to afford controlling weight to treating source opinion stating that claimant suffered from moderate limitations due to bipolar disorder where the treatment notes indicated a few isolated instances of decompensation and showed that claimant's mental impairments were effectively managed through medication and therapy).

Second, the ALJ cited plaintiff's activities of daily living to discredit Dr. Wiedershine's report. The ALJ discussed a Function Report, completed by plaintiff on November 5, 2015, in which she stated:

- she takes care of her fourteen-year-old daughter;

- she has no problem with personal care;

- she prepares breakfast, lunch and dinner on a daily basis;

- she is able to cook, clean the house, iron and do laundry without any assistance;

- she goes outside once or twice a day, or whenever she needs to run errands, and travels alone, either walking or using public transportation;

- she shops for food and clothes;

- she handles her finances;

- she reads books, magazines and newspapers every day and spends time with others via the telephone or visiting in person;

- her alleged illnesses, injuries or conditions had no effect on her ability to lift, stand, walk, sit, climb stairs, kneel, squat, reach or use her hands;

- she used to have panic attacks everyday, until she started taking medication.

R. 18-19, 187-92, 195. The ALJ also discussed plaintiff's December 2015 psychiatric consultative examination, during which plaintiff reported:

- she is able to dress, bathe and groom herself on a daily basis;

- she cooks and prepares food six days a week;

- she does general cleaning daily, laundry once a week and shopping twice a week;

- she is able to manage money and takes public transportation independently;

- she socializes with family members;

- she spends most of her days reading, when she is not taking care of her child or doing housework.

R. 21, 313-14. Further, the ALJ discussed a second consultative psychiatric examination in September 2017, during which plaintiff reported:

- she dresses, bathes and grooms herself every day;

- she cooks and prepares food five times a week, cleans once a week, does laundry once a week and shops once a month;

- she manages money and travels independently on public transportation;

- she socializes "a little" and spends time with her daughters;

- she watches television, listens to music, uses a computer/tablet, texts, talks on the phone and "sometimes" is on e-mail;

- she is involved in social media.

R. 22, 331. At bottom, the ALJ concluded: "It appears that despite her impairments, [plaintiff] has engaged in a somewhat normal level of daily activities and interaction." R. 27. Accordingly, the ALJ discounted Dr. Wiedershine's report because it was inconsistent with plaintiff's statements regarding her activities of daily living. This was not error. See Domm v. Colvin, 579 F. App'x 27, 28 (2d Cir. 2014) ("Here, the ALJ pointed to substantial evidence for giving the narrative statement of [plaintiff's] treating physician . . . only probative weight, noting

-15-

that [the physician's] restrictive assessment was inconsistent with . . . [plaintiff's] testimony regarding her daily functioning."); Roma v. Astrue, 468 F. App'x 16, 19 (2d Cir. 2012) (not error for an ALJ to use a claimant's participation in a "broad range of light, non-stressful activities" as evidence contradicting a treating source's opinion).

Finally, as the ALJ noted, Dr. Wiedershine's opinions were inconsistent with other substantial record evidence. R. 25. The ALJ carefully reviewed plaintiff's mental health treatment notes from New York Psychotherapy and Counseling (from June 2015 through October 2017). R. 20-21. As the ALJ observed, these treatment notes reflect plaintiff's major depressive disorder improved with medication therapy and, since February 2016, her symptoms were typically stable with some exacerbation in the context of psycho-social stressors. See Nunez v. Colvin, No. 15 Civ. 4957, 2017 WL 684228, at *13 (S.D.N.Y. Feb. 21, 2017). For instance, in addition to the treatment notes detailed above:

> • November 6, 2015: plaintiff reported all symptoms adequately controlled by medication, without side effects. R. 20, 447.

> • November 18, 2015, plaintiff was calm and she reported she could not go to work despite her shelter and public assistance asking her because she had to babysit her granddaughter. R. 20, 450.

> • June 29, 2016: plaintiff "reported feeling okay during this session." R. 498-99.

> • July 6, 2016: plaintiff "reported feeling stable during this session." R. 500-01.

> • July 13, 2016: plaintiff "reported that she feels positive during this session." R. 501-02.

> • August 3, 2016: plaintiff reported feeling "stable" and "hopeful." R. 506-07.

> • August 24, 2016: plaintiff "reported feeling stable during this session." R. 512.

• September 14, 2016: plaintiff was "stressed" and "depressed during this session because a real estate company is asking her for a deposit for an apartment and she does not have that amount of money." R. 514-15.

• September 21, 2016: plaintiff was "depressed and anxious" because she "feels pressured to find an apartment." R. 517.

• September 28, 2016: plaintiff was "depressed and anxious" about her housing situation. R. 518.

• October 5, 2016: plaintiff was "anxious" about her housing situation. R. 520.

• October 28, 2016: plaintiff "reported being stressed due to not yet receiving positive news regarding finding an apartment from the housing specialist." R. 523.

• November 23, 2016: plaintiff "reported feeling less depressed about the housing process she is in." R. 528.

• December 2, 2016: plaintiff reported feeling "stable." R. 530.

• December 30, 2016: plaintiff reported "feeling more depressed lately" because of the holidays and her living situation. R. 535.

• February 1, 2017: plaintiff was depressed because she had been denied an apartment because of her credit. R. 540.

• March 2, 2017: plaintiff had been offered an apartment and "reported feeling positive during this session." R. 543.

• April 12, 2017: plaintiff presented "with a euthymic mood and affect." R. 548.[4]

• April 26, 2017: plaintiff presented "with a euthymic mood and affect." R. 550. She reported that she was "excited" because she had moved into a new apartment, and that her "depression is a little better now that [she has her] own apartment." Id.

• May 19, 2017: plaintiff presented "with a depressed mood and affect" and reported feeling "sad and down" because she had not seen her granddaughter

---

[4] Euthymia is defined as "a normal, tranquil mental state or mood[.]" *Merriam-Webster Medical Dictionary*, accessed at https://www.merriam-webster.com/medical/euthymia.

for a month.  R. 553-54.

      • May 24, 2017: plaintiff presented "with a depressed mood and affect." R. 556.  She reported feeling "ok just a little sad and anxious" because of an argument with her daughter.  R. 557.

      • June 2, 2017:  plaintiff presented "with a depressed mood and affect" and reported that she was "still feeling down this week" because of an argument with another daughter.  R. 557-58.

      • June 15, 2017:  plaintiff presented "with a depressed mood and affect" and reported she was "still sad" due to ongoing issues with her daughter.  R. 562-63.  She was "thinking about going to the gym to distract [her] mind."  R. 563.

      • June 28, 2017: plaintiff presented "with a euthymic mood and affect." R. 566.

      • July 7, 2017: plaintiff reported "all symptoms adequately controlled by meds."  R. 568.

      • July 12, 2017: plaintiff presented "with a happy mood and affect."  R. 569.

      • August 4, 2017: plaintiff presented "with a euthymic mood and affect." R. 575.

      • August 25, 2017: plaintiff presented "with a euthymic mood and affect" and reported:  she's "been feeling good."  R. 580.

      • September 1, 2017: plaintiff presented "with a euthymic mood and affect."  R. 582.  During a medication management session that same day, plaintiff reported "all symptoms adequately controlled by meds."  R. 580.

      • September 22, 2017: plaintiff presented "with a euthymic mood and affect" and reported that her "depression is not too bad."  R. 585.

      • September 29, 2017: plaintiff presented "with a euthymic mood and affect" and reported: "I'm doing ok, just a little sad about all these natural disasters."  R. 587.  During a medication management session that same day, plaintiff reported "all symptoms adequately controlled by meds."  R. 587.

      • October 6, 2017: plaintiff presented "with a euthymic mood and affect" and reported that her "depression is ok, but the medication makes [her] sleep a lot."  R. 589.

> • October 13, 2017: plaintiff presented "with a happy mood and affect."

R. 591.

> • October 27, 2017: plaintiff presented "with a happy mood and affect,"
> although she reported that she had been feeling "down" because of loneliness. R.
> 593.

These treatment notes constitute substantial evidence supporting the ALJ's determination to

discount Dr. Wiedershine's opinions. See Anselm v. Comm'r of Soc. Sec., 737 F. App'x 552,

555 (2d Cir. 2018) (ALJ "may set aside an opinion of a treating physician that is contradicted by

the weight of other record evidence"); Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) ("The

opinions of examining physicians are not controlling if they are contradicted by substantial

evidence, be that conflicting medical evidence or other evidence in the record.").

Plaintiff also argues that the ALJ erred in giving "significant weight" to the opinions of

consultative examining psychologists Dr. Nikkah and Dr. Broska, "despite the fact that they each

saw Ms. Santana only once." Dkt. #15, at 20. On December 10, 2015, Dr. Nikkah opined:

> The claimant is able to follow and understand simple directions and
> instructions, perform simple tasks independently. She is mildly limited in her
> ability to maintain attention and concentration and maintain a regular schedule.
> She is able to learn new tasks. She is moderately limited in her ability to perform
> complex tasks independently. She is mildly limited in her ability to make
> appropriate decisions, relate adequately with others, and appropriately deal with
> stress. These difficulties are caused by a combination of fatigue and lack of
> motivation.

R. 314. On September 5, 2017, Dr. Broska opined:

> Vocationally, there is no evidence of psychiatric limitation understanding,
> remembering, or applying simple directions and instructions. There is evidence
> for mild limitation understanding, remembering, or applying complex directions
> and instructions. There is no evidence of limitation using reason and judgment to
> make work-related decisions, mild limitation interacting adequately with
> supervisors, coworkers, and the public, sustaining concentration and performing a
> task at a consistent pace. There is no evidence of limitation sustaining an
> ordinary routine and regular attendance at work. There is evidence for mild to
> moderate limitation regulating emotions, controlling behavior, and maintaining

well-being. There is no evidence of limitation maintaining personal hygiene and appropriate attire, having an awareness of normal hazards and taking appropriate precautions.

R. 331.

"[I]t is well established in this Circuit that a consultative examiner's opinion may be entitled to as much or greater weight than that of a treating source so long as it is consistent with the record." Rodriguez v. Berryhill, No. 18 Civ. 5238, 2019 WL 4010397, at *15 (S.D.N.Y. Aug. 26, 2019) (citing cases). See Suttles v. Colvin, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order) (ALJ did not err in giving great weight to consultative examiner's opinion because it was consistent with record evidence); Colbert v. Comm'r of Soc. Sec., 313 F. Supp.3d 562, 577 (S.D.N.Y. 2018) (citing cases). Here, the ALJ found Dr. Nikkah's opinions "consistent with the evidence showing mostly intact concentration and attention and memory, and the occasional findings of a depressed mood and affect." R. 24. Similarly, the ALJ found Dr. Broska's opinions "consistent with the results of the claimant's mental status examinations that generally revealed no more than moderate psychiatric symptoms." R. 25. In sum, as the ALJ found, Dr. Nikkah's and Dr. Broska's opinions were more consistent with the record as a whole than Dr. Wiedershine's opinion. Accordingly, the ALJ did not err in assigning "significant weight" to the consultative examiners' opinions.

When the record contains "conflicting . . . evaluations of [a claimant's] present condition, it [is] within the province of the ALJ to resolve that evidence. Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002). Here, at bottom, the ALJ acted well within his discretion: he resolved the conflicting evidence and sufficiently explained why he declined to afford controlling weight to

Dr. Wiedershine's opinion.[5]

B. Exertional RFC

Plaintiff contends that the ALJ's determination that plaintiff had the RFC to perform "light" work is not supported by substantial evidence. Dkt. #15, at 21-22.[6] Specifically, plaintiff argues that the ALJ "rejected" Dr. Ravi's consultative opinion and cited no other medical evidence "showing that Ms. Santana had the ability to stand or walk six hours or lift 20 pounds[.]" Id. at 22. I disagree.

The ALJ addressed Dr. Ravi's opinion as follows:

Dr. Ravi opined the claimant had no limitations to sitting or standing, and moderate limitations in bending, pushing, pulling, lifting, carrying, and overhead activities (Ex. 8F, p. 3-8) [R. 339-44]. He indicated she should avoid squatting. He further opined she could occasionally lift and carry up to 20 pounds, sit, stand, and walk each 6 hours at one time, and sit, stand, and walk each 8 hours total in an 8-hour workday. . . . I give partial weight to Dr. Ravi's opinions because though he based them on an in person examination of the claimant, they are internally inconsistent, such as the opinion that the claimant could stand 8 hours total in a workday, but only 6 hours at one time, and because he also did not provide much support for his opinions. His opinions are also inconsistent with his own examination findings. For example, his opinions regarding sitting, standing, and walking are inconsistent with his findings of decreased range of motion in

---

[5] In any event, in determining plaintiff's RFC, the ALJ "considered the findings of a depressed mood and anxiousness in support of the claimant's allegations, and as such, limit her to performing more than simple, but less than complex tasks, with only occasional changes in the workplace, occasional interaction with supervisors and coworkers, no contact with the public, 5 percent time off task, 1 unscheduled absence per month, and toleration of up to loud noise." R. 21.

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

several areas (Ex. 8F, p. 2) [R. 338].[7]

R. 26. Thus, contrary to plaintiff's assertion, the ALJ did not "reject" Dr. Ravi's opinions – he gave them "partial weight." Further, also contrary to plaintiff's assertion, the ALJ cited medical evidence in support of his RFC determination: he clearly credited Dr. Ravi's assessment that plaintiff could occasionally lift and carry up to twenty pounds and sit, stand and walk each six hours.

Moreover, as the ALJ noted, the record reflects that plaintiff first sought treatment for knee pain in September 2016. R. 23, 360. Specifically, on September 29, 2016, she reported knee pain for three days (but only when she walked very fast) and that it ameliorated with rest. Id. The ALJ also noted that "[t]he record contains no further treatment for the claimant's alleged knee pain until July 2017, when the claimant complained of bilateral knee pain for 2 months." R. 23, 353. A physical examination revealed crepitus[8] over both knees, anterior tenderness of both knees and normal range of motion. Id. Plaintiff was diagnosed with osteoarthritis of both knees and an x-ray was ordered. Id. However, as the ALJ noted, there are no radiographic imaging reports in the record; similarly, there are no additional treatment records reflecting complaints of (or treatment for) knee pain or osteoarthritis. R. 26. Finally, as discussed above, the ALJ also noted plaintiff's ongoing ability to engage in a "somewhat normal level" of daily activities despite her impairments. R. 27.

Plaintiff also argues that the ALJ failed to properly consider plaintiff's obesity, in that his

---

[7] Dr. Ravi noted that plaintiff had decreased ranges of motion in her lumbar spine, shoulders, hips and knees. R. 338.

[8] Crepitation is defined as "a grating or crackling sound or sensation[.]" *Merriam-Webster Medical Dictionary*, accessed at https://www.merriam-webster.com/medical/crepitation.

"evaluation of Ms. Santana's obesity was limited to boilerplate language in the ALJ's step-two analysis." Dkt. #15, at 22-25. Plaintiff is mistaken.

At step two, as plaintiff notes, the ALJ stated:

> As indicated above, I find the claimant's obesity is a severe impairment. Obesity is a severe impairment when alone, or in combination with another medically determinable physical or mental impairment, significantly limits an individual's physical or mental ability to do basic work activities (SSR 02-1p). The record indicates a longitudinal history of obesity, and at the hearing on December 18, 2017, the claimant testified she was 5 feet and 7.5 inches tall and weighed 260 pounds, giving her a Body Mass Index (BMI) of approximately 40.1 (Ex. 4F, p. 2). The claimant's weight, including its impact on her musculoskeletal disorder, has been considered within the functional limitations determined herein.

R. 15 (footnote omitted). Additionally, contrary to plaintiff's argument, the ALJ specifically considered plaintiff's obesity in conjunction with weighing the opinions of the consultative physical examiners (Dr. Ravi and Dr. Graham). As to Dr. Ravi, the ALJ stated: "I have considered the findings on examination with Dr. Ravi and in July 2017 in support of the claimant's allegations, and coupled with obesity and hypertension, find the claimant is limited to performing work at the light exertional level with the foot control and postural limitations detailed above." R. 24. As to Dr. Graham, although he opined that plaintiff had no limitation, *inter alia*, in sitting, standing, walking, lifting or carrying, the ALJ gave partial weight to Dr. Graham's opinion and gave "the claimant the benefit of the doubt and find she has limitations based on obesity, hypertension, and osteoarthritis." R. 25.

In sum, the ALJ adequately explained his rationale for concluding that plaintiff could perform light work. Accordingly, I conclude that substantial evidence supports the ALJ's physical RFC determination.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's motion is **GRANTED** and plaintiff's motion is **DENIED**.

The Clerk of the Court is respectfully directed to terminate the pending motions (Dkt. #14, #18) and close this case.

Dated:  November 18, 2019
       White Plains, New York

SO ORDERED.

_____
PAUL E. DAVISON, U.S.M.J.